UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CECILIO CORDOVA, RONALD HOAYEK-
GONZALEZ, MACARIO CORTES, and
MARTIN MARTINEZ-VERIA, on behalf of
themselves and others similarly situated,

                             Plaintiffs,

           -against-

SCCF, INC., 45th ST. CUBAN, LLC d/b/a
SOPHIE'S CUBAN CUISINE, CHAMBERLAIN
RESTAURANT INC. d/b/a SOPHIE'S CUBAN
CUISINE, 27 SMITH ST. CUBAN LLC d/b/a
SOPHIE'S CUBAN  CUISINE, MAHABIR
ENTERPRISES LLC d/b/a SOPHIE'S CUBAN
CUISINE, LUNA ENTERPRISE INC. d/b/a
SOPHIE'S CUBAN CUISINE, SOPHIE'S
RESTAURANT #3 LLC d/b/a SOPHIE'S CUBAN
CUISINE, SOFIA LUNA, PATRICIA LUNA,
THOMAS CHAMBERLAIN, and
ALVIN LOPEZ,

                            Defendants.
-----------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS', SCCF, INC., LUNA ENTERPRISES, INC.,
## SOPHIE'S RESTAURANT #3 LLC, AND SOFIA LUNA,
## MOTION TO DISMISS THE COMPLAINT


Davidoff Hutcher & Citron LLP
200 Garden City Plaza, Suite 315
Garden City, New York 11530
(516) 248-6400

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................2

STATEMENT OF FACTS ........................................................................................................3

    I.    The Plaintiffs ............................................................................................................3

    II.   The Defendants ..........................................................................................................3

        A.    SCCF Inc. ........................................................................................................3

        B.    The Chamberlain Franchisees ...........................................................................4

        C.    Mahabir Enterprises LLC ..................................................................................4

        D.    The Individual Chamberlain Defendants ............................................................4

        E.    The Non-Franchise Defendants. ........................................................................4

        F.    Individual Defendants Sofia Luna and Patricia Luna ..........................................5

        G.    The Defendants .................................................................................................5

    II.   The Claims: ................................................................................................................5

    III.  The Instant Motion ....................................................................................................6

ARGUMENT .........................................................................................................................7

    POINT I ......................................................................................................................7

        The Standard of Review ...................................................................................7

    POINT II .....................................................................................................................8

        The Court Should Dismiss the Second Amended Complaint Against the Moving
        Defendants as The Complaint Fails to Allege Sufficient Facts Which Show that Each
        Defendant Was Plaintiffs' Employer or Joint
        Employer…………………………………………………….............................................8

    POINT III ....................................................................................................................14

        The Allegations Against the Corporate Sophie's Defendant Are Typical of a Franchisor-
        Franchisee Relationship Which Does Not Give Rise to Co-Employer Status. .................14

    A.   The Chamberlain Franchisees were controlled by the Chamberlain Defendants. ...............19

    B.   There Are No Allegations against the Non-Franchise Defendants. ....................................20

    POINT IV ....................................................................................................................21

        The Moving Defendants Are Not Part of a Single Integrated Employer ..........................21

    POINT V .....................................................................................................................23

        The Third and Fourth Causes of ActionShould be Dismissed Against the Moving
        Defendants ..................................................................................................................23

i

POINT VI ..............................................................................................................24

    The Claims Against Sofia Luna Should Be Dismissed ....................................24

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………………………………………7

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544, 555 (2007)........................................................................................7

*Camio v. Douglas Elliman, LLC*,
    No. 06-Civ.-7092 (NRB), 2007 WL 4358456, (S.D.N.Y. Dec. 10, 2007))..............10

*Carter v. Dutchess Cmty. Coll.*,
    735 F.2d 8, 12 (2d Cir. 1984))................................................................................9

*Clinton's Ditch Coop. co. v. NLRB*,
    778 F.2d 132, 137 (2d Cir. 1985) ...........................................................................21

*Cook v. Arrowsmith Shelburne, Inc.*
    63 F.3d 1235, 1240 (2d Cir. 1995) .........................................................................21

*Diaz v. Consortium for Worker Educ. Inc.*,
    2010 WL 3910280, (S.D.N.Y. Sept.28, 2010) .......................................................24

*Diaz v. Consortium for Worker Education, Inc.*,
    No. 10-Civ.-01848 (LAP), 2010 WL 3910280, (S.D.N.Y. Sept. 28, 2010)............10

*Hale v. State of Arizona*,
    993 F.3d 1387, 1394 (9th Cir. 1993))......................................................................17

*Hatcher v. Augustus*,
    956 F .Supp. 387 (E.D.N.Y. 1997) ..........................................................................18

*Herman v. RSR Sec. Servs.*,
    172 F.3d 132, 139 (2d Cir. 1999) .............................................................................9

*Hernandez v. La Cazuela de Mari Restaurant, Inc.*,
    538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) ............................................................24

*Jean-Louis v. Metropolitan Cable Communications, Inc.*,
    838 F.Supp.2d 111, 126-28 (S.D.N.Y. 2011).........................................................18

*Lawrence v. Adderley Industries, Inc.*,
    No. CV-09-2309 (SJF)(ETB), 2011 WL 666304 (E.D.N.Y. Feb. 11, 2011) ...........18

*Lepkowski v. Telatron Marketing Group, Inc.*,

766 F. Supp. 2d 572 (W.D.Pa. 2011).........................................................................21

*Lopez v. Acme American Environmental Co., Inc.*,
   No. 12-Civ.-511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ......................................9

*Lundy v. Catholic Health System of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) ......................................................................7

*Moon v. Kwon*,
   248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)) .............................................24

*Nakahata v. New York Presbyterian Healthcare Sys.*,
   2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ...........................................8

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
   2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012) ...........................................9

*Paz v. Piedra*,
   No. 09-Civ.-03977 (LAK)(GWG), 2012 WL 121103 (S.D.N.Y. Jan. 12, 2012) .....................11

*Perez v. Westchester Foreign Autos, Inc.*
   No. 11-Civ.-6091 (ER), 2013 WL 749497 (S.D.N.Y Feb. 28, 2013) ...................................21

*Reese v. Coastal Restoration and Cleaning Services, Inc.*,
   Civil Action No. 1:10-cv-36 (RHW), 2010 WL 5184841 (S. D. Miss. Dec. 15, 2010)...........17

*Sampson v. Medisys Health Network, Inc.*,
   No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027838 (E.D.N.Y.  July 24, 2012) .......................10

*Severin v. Project OHR, Inc.*,
   No. 10-Civ.-9696 (DLC), 2011 WL 3902994 (S.D.N.Y.  2011)..................................9

*Singh v. 7-Eleven, Inc.*,
   No. C-05-04534 (RMW), 2007 WL 715488 (N.D.Cal. Mar. 8, 2007).....................................17

*Slamna v. API Rest. Corp.*,
   No. 12-Civ.-757 (RWS), 2012 WL 2979067 (S.D.N.Y. July 20, 2012) ...................................8

*Tracv v. NVR. Inc.*,
   2009 WL 3153150 (W.D.N.Y. Sept.30, 2009))....................................................24

*Walz v. 44 & X Inc.*,
   12 Civ. 5800 (CM), 2012 U.S. Dist. LEXIS 161382 (S.D.N.Y. Nov. 7, 2012) ......................7

80097427v.4

*Wolman v. Catholic Health System of Long Island*,
   853 F. Supp. 2d 290, 298 (E.D.N.Y. 2012) ............................................................................10

*Xue Lian Lin v. Comprehensive Health Memt., Inc.*,
   2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) ............................................................................24

*Xue Lian Lin v. Comprehensive Health Mgmt.*, 08-Civ.-6519 (PKC), 2009 WL 976835
   (S.D.N.Y. Apr. 8, 2009)..........................................................................................................9

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003) ......................................................9

**Statutes**

29 U.S.C. § 203(d)..........................................................................................................................13

29 U.S.C. § 203(g)..........................................................................................................................13

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................6

v

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CECILIO CORDOVA, RONALD HOAYEK-
GONZALEZ, MACARIO CORTES, and
MARTIN MARTINEZ-VERIA, on behalf of
themselves and others similarly situated,

                               Plaintiffs,

        -against-

SCCF, INC., 45th ST. CUBAN, LLC d/b/a
SOPHIE'S CUBAN CUISINE, CHAMBERLAIN
RESTAURANT INC. d/b/a SOPHIE'S CUBAN
CUISINE, 27 SMITH ST. CUBAN LLC d/b/a
SOPHIE'S CUBAN  CUISINE, MAHABIR
ENTERPRISES LLC d/b/a SOPHIE'S CUBAN
CUISINE, LUNA ENTERPRISE INC. d/b/a
SOPHIE'S CUBAN CUISINE, SOPHIE'S
RESTAURANT #3 LLC d/b/a SOPHIE'S CUBAN
CUISINE, SOFIA LUNA, PATRICIA LUNA,
THOMAS CHAMBERLAIN, and
ALVIN LOPEZ,
                          Defendants.
------------------------------------------------------------x

**Case Number:**
13-CV-5665 (LTS) (HP)

NOTICE OF MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT

This Memorandum of Law is submitted on behalf of co-defendants, SCCF, Inc., denominated in Plaintiffs' Second Amended Complaint Collective/Class Action Complaint ("SAC")[1] as the "Corporate Sophie's Defendant"; Luna Enterprise, Inc. d/b/a Sophie's Cuisine, and Sophie's Restaurant #3 LLC d/b/a Sophie's Cuban Cuisine, collectively denominated in the SAC as the "Non-Franchise Defendants"; and individual defendant Sofia Luna ("S. Luna"). For the purposes of this motion, these co-defendants are being collective referred to herein as the "Moving Defendants".

The Non-Moving Defendants are co-defendants 45 St. Cuban, LLC d./b/a Sophie's Cuban Cuisine, Chamberlain Restaurant Inc. d/b/a Sophie's Cuban Cuisine,  Chamberlain Restaurant Inc., 27 Smith St. Cuban LLC d/b/a Sophie's Cuban Cuisine (collectively referred to herein as the "Chamberlain Franchisees")[2];  Mahabir Enterprises LLC d/b/a Sophie's Cuban Cuisine ("Mahabir"[3]) and the individual defendants, Thomas Chamberlain and Alvin Lopez (the "Individual Chamberlain Defendants") and Patricia Luna ("P. Luna").  The Chamberlain Franchisees and Mahabir have been lumped together in the SAC and denominated as the "Franchise Corporate Defendants".

The Moving Defendants seek to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the four claims asserted against them in the SAC for violations of the Fair Labor Standard Act ("FLSA") and the New York State Labor Law ("NYSLL") alleging, *inter alia*, minimum wage and overtime violations and retaliation.

---

[1] A copy of the Second Amended Complaint is annexed to the Declaration of Mark E. Spund, Esq.
[2] The SAC is confusing as it lumps all of the defendants together.  In order to differentiate the various categories of defendants we have designated franchisee restaurants 45 St. Cuban LLC, Chamberlain Restaurant Inc. and 27 Smith St. Cuban LLC as the "Chamberlain Franchisees".  The Chamberlain Franchisees together with the Individual Chamberlain Defendants are represented by other counsel.
[3] Defendants Mahabir Enterprises LLC and Patricia Luna are represented by Davidoff Hutcher & Citron LLP, attorneys for the Moving Defendants.

1

The SAC denominates the Moving Defendants and non-moving defendants, all as the "Defendants" in each cause of action without differentiation.[4]

## PRELIMINARY STATEMENT

The SAC essentially alleges that all of the Defendants were either joint employers with each other or constituted a single integrated enterprise despite the fact that plaintiffs Cecilo Cordova ("Cordova"), Ronald Hoayek-Gonzalez ("Gonzalez") and Macario Cortes ("Cortes" and collectively referred to herein as the "Chamberlin Plaintiffs") only worked for the Chamberlain Franchisees and plaintiff Martin Martinez-Verea ("Verea") only worked for Mahabir. There are no allegations that any of the Plaintiffs worked in either of the two Non-Franchise Defendants' restaurants or were employed by Corporate Sophie's Defendant. Nor are there any allegations that S. Luna had any control over Plaintiffs Cordova, Gonzalez or Cortez.

It is respectfully submitted and as set forth more fully herein, the SAC fails to plead sufficient facts to support the allegations that the Moving Defendants functioned as either a joint employer or that, together with the Non-Moving Defendants, constituted either joint employers or a single integrated employer.

Accordingly, the SAC should be dismissed against the Moving Defendants.

---

[4] It should be noted that while the SAC affirmatively states that individual defendants S. Luna and P. Luna were both owners and operators of Mahabir and the Non-Franchise Defendants - these statements should have been made "upon information and belief" as plaintiffs have no affirmative evidence that S. Luna is either an owner or operator of Mahabir or that P. Luna is either an owner or operator of the Non-Franchise Defendants.

80097427v.4

## STATEMENT OF FACTS

Although the Moving Defendants have substantial disagreement with how the parties are identified in the SAC, in order to simplify the identity of the parties and differentiate the Moving Defendants' arguments, we will identify the various parties through reference to the SAC without conceding their accuracy.

### I.   The Plaintiffs:

- The Chamberlain Plaintiffs were hired by individual defendants Chamberlain and Lopez and were employed as non-exempt delivery persons, stock persons and cleaners at 21 W. 45th Street, New York, New York, one of the three Chamberlain Franchisee locations. (SAC ¶¶ 68, 73, 79)

- Verea was hired by franchisee Mahabir Enterprises LLC to work as a non-exempt delivery person, stock person and cleaner. (SAC ¶85)  There are no allegations that Verea worked for any of the Chamberlain Franchisees or the Non-Franchise Defendants. Moreover, the only allegations made by Verea is that defendant Mahabir failed to pay him the proper statutory minimum wage and failed to pay him for approximately three (3) hours of work each week. (SAC ¶88)

### II.   The Defendants

#### A.   SCCF Inc.

- Defendant SCCF Inc. referred to as the "Corporate Sophie's Defendant" is a franchisor which granted franchises to the Franchise Defendants (SAC ¶ 1), either directly or as successor in interest to Sophie's Cuban Cuisine Franchising, Inc. which was a named defendant in the initial and First Amended Complaints. (SAC  ¶36)

3

- The SAC alleges that Corporate Sophie's Defendant is an employer of Plaintiffs and similarly situated employees. (SAC ¶ 42).

**B.      The Chamberlain Franchisees**

- The Chamberlain Franchisees are the three franchised restaurants located at 21 West 45th Street,  27 Smith Street and 141 Fulton Street all doing business under the name Sophie's Cuban Cuisine. (SAC ¶26)  The Chamberlain Franchisees were granted franchises by the Corporate Sophie's Defendant. (SAC ¶33)

**C.      Mahabir Enterprises LLC**

- Defendant Mahabir Enterprises LLC is a franchisee of SCCF located at 28 E. 23rd Street, New York, New York doing business under the name Sophie's Cuban Cuisine. (SAC ¶ 30). The SAC alleges that Mahabir is owned and operated by individual defendants S. Luna and P. Luna. (SAC ¶30)

**D.      The Individual Chamberlain Defendants**

- Defendants Thomas Chamberlain and Alvin Lopez are the owners, officers, shareholders, directors, supervisors, managing agents and proprietors of the Chamberlain Franchisees and actively participated in the day-to-day operations of the restaurants and exercise operational and functional control of these franchisees.   (SAC ¶¶ 21, 22, 23-26, 46)

**E.      The Non-Franchise Defendants.**

- Defendants Luna Enterprises LLC and Sophie's Restaurant #3 are corporately owned restaurants doing business under the name Sophie's Cuban Cuisine and are located respectively at 96 Chambers Street and 26 Broadway, New York, New York. (SAC ¶1, 28,29).

4

### F.    Individual Defendants Sofia Luna and Patricia Luna

- Defendant Sofia Luna is an officer, shareholder, director, supervisor and managing agent of SCCF. (SAC ¶¶ 4, 40)

- The SAC alleges that defendants S. Luna and P. Luna are the owners and operators of Mahabir and the Non-Franchise Defendants. (SAC ¶19) The SAC alleges that defendants S. Luna and P. Luna directed and exercised operational control of the Franchise Corporate Defendant - Mahabir- as well as the Non-Franchise Defendants. (SAC ¶ 20)

- There are no allegations that S. Luna and P. Luna directed or exercised operational control over the Chamberlain Franchisees.

### G.    The Defendants

- The SAC collectively refers to all of the foregoing as the "Defendants" in all four causes of action.  (SAC ¶¶ 1, 124-172)

- The SAC alleges that all of the Defendants were Plaintiffs' employers (SAC ¶ 43-45)

    To clarify the above, there are five distinct defendant groups; (a) the Chamberlain Franchisees and the Individual Chamberlain Defendants; (b) Mahabir (c) Corporate Sophie's Defendant; (d) the Non Franchise Defendants; and (e) S. Luna and P. Luna.

## II.    The Claims:

    The SAC contains two wage/hour claims and two retaliation claims against all of the Defendants without differentiating which claim is pled against which defendant.

5

- The First Claim (SAC ¶¶ 124-140)[5] alleges "Defendants" failure to pay the statutory minimum wage, taking an unlawful tip credit, failure to pay required overtime wages for all overtime hours, misappropriation of a portion of tips received from tipped employees and requiring employees to participate in an improper tip pool all in violation of the FLSA.

- The Second Claim (SAC ¶¶ 141-158) alleges "Defendants" failure to pay minimum wages, taking an unlawful tip credit, failure to pay overtime wages for all overtime hours worked, failure to pay the spread of hours premium, misappropriation of tips, failure to pay wages for some hours worked off the clock, obtaining "kickbacks' from employees and failure to maintain payroll records for six years under the NYLL.

- The Third Claim (SAC ¶¶ 159-165) also pled against all "Defendants" alleges retaliation under the FLSA for the termination of plaintiff Cordova by defendants Chamberlain and Lopez after service of the original Summons and Complaint.

- The Fourth Claim (SAC ¶¶ 166-172) alleges retaliation also pled against all "Defendants" under the NYLL for the termination of plaintiff Cordova by defendants Chamberlain and Lopez after service of the original Summons and Complaint.

Although the Third and Fourth Claim allege that retaliatory actions were taken by Chamberlain and Lopez only, these claims are also pled generally against all of the "Defendants".

## III.    The Instant Motion

The Moving Defendants, each of whom never employed any of the Plaintiffs, move to dismiss the causes of action asserted against them.   Plaintiffs provide no facts that the

---

[5] Again, it should be noted that the only allegations regarding Verea are overtime and off the clock work (SAC ¶ 88).

Corporate Sophie's Defendant and the Non-Franchise Defendants - restaurants where the Plaintiffs never set foot in- were their "employer". Rather, through ritualistic allegations and ignoring the corporate structure of the various Moving Defendants, Plaintiffs try to hold the Moving Defendants liable when no such liability is shown.

## <u>ARGUMENT</u>

### POINT I

### The Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Under Federal Rule of Civil Procedure 8(a)(2), a 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id.* at 557. Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 566 U.S. at 680-81. Allegations that supply no more than "low-octane fuel for speculation" are insufficient. *Lundy*, 711 F. 3d at 115.

As this Court has observed, this standard is met when the plaintiff pleads "enough *facts* to state a claim to relief that is plausible on its face." *Walz v. 44 & X Inc.*, 12 Civ. 5800 (CM), 2012 U.S. Dist. LEXIS 161382, at *12 (S.D.N.Y. Nov. 7, 2012) (emphasis added) (dismissing putative

7

class action discrimination allegations for failure to plead facts in support thereof) (quoting *Twombly*, 550 U.S. at 570); *see also Lundy* 711 F.3d at 120 (dismissing FLSA claim because plaintiffs' conclusory allegations merely "invited speculation" and did "not amount to a plausible claim under the FLSA"); *Slamna v. API Rest. Corp.*, No. 12-Civ.-757 (RWS), 2012 WL 2979067, at *6 (S.D.N.Y. July 20, 2012) (dismissing FLSA and NYLL claims against two entities because plaintiffs failed to allege sufficient facts establishing an employment or joint employment relationship); *Nakahata v. New York Presbyterian Healthcare Sys.*, 2011 WL 321186 at *3 (S.D.N.Y. Jan. 28, 2011) *aff'd in part* 723 F.3d 192 (2013) (dismissing FLSA and NYLL claims because "complaints [were] deficient due to the failure to specify which entity, among the many named defendants, employed the respective plaintiffs").

### POINT II

**The Court Should Dismiss the Second Amended Complaint Against the Moving Defendants as The Complaint Fails to Allege Sufficient Facts Which Show that Each Defendant Was Plaintiffs' Employer or Joint Employer.**

Ostensibly to create a more lucrative class action complaint, Plaintiffs try to sweep in the Corporate Sophie's Defendant, the Non-Franchise Defendants and S. Luna by asserting, in conclusory fashion, that all were either joint employers or that they, together with the Chamberlain Franchisees and Mahabir, constituted a single integrated employer.

To be held liable under the FLSA, a person must be an "employer," which the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).   An entity or individual "employs" an individual if it "suffer[s] or permit[s]" that individual to work.  29 U.S.C. § 203(g).  Pursuant to the FLSA and NYLL, "the overarching concern is whether the alleged employer possessed the power to control the workers in question…with an eye to the 'economic reality' presented by the facts of each case."

8

*Herman v. RSR Sec. Servs.,* 172 F.3d 132, 139 (2d Cir. 1999); *see also Lopez v. Acme American Environmental Co., Inc.*, No. 12-Civ.-511 (WHP), 2012 WL 6062501 at *3, 4 (S.D.N.Y. Dec. 6, 2012).

The economic reality test generally considers four relevant factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled the employee work schedules or schedules of employment, (3) determined the rate and method of payment; and (4) maintained employment records." *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Xue Lian Lin v. Comprehensive Health Mgmt.*, 08-Civ.-6519 (PKC), 2009 WL 976835 at *2 (S.D.N.Y. Apr. 8, 2009) (noting that both the FLSA and NYLL employ similar standards with respect to employment status). An entity need not possess "formal control over a worker to qualify as an employer, so long as that entity exercises "functional control" over the worker in question. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).[6]

This economic reality test should be applied at the pleading stage when there is a question whether the complaint adequately alleges co-employment status. *See Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012) (applying economic reality test and finding "plaintiffs have not adequately pled that each defendant qualifies as their 'employer' under the FLSA and NYLL"); *Severin v. Project OHR,*

---

[6] The Second Circuit in *Zheng* applied six additional, somewhat overlapping factors to determine whether a general contractor exhibited functional control over the employees of a subcontractor: (1) whether the alleged employer's premises and equipment were used for the plaintiff's' work; (2) whether plaintiff's employer had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiff performed a discrete line-job that was integral to the alleged employer's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employer or its agents supervised plaintiff's work; and (6) whether plaintiff worked exclusively or predominately for the alleged employer. 355 F. 3d at 72. Plaintiffs do not allege facts that satisfy any of these factors for the Non-Franchisee Defendants.

9

*Inc.*, No. 10-Civ.-9696 (DLC), 2011 WL 3902994 at *6 (S.D.N.Y. 2011)("Plaintiffs have failed to plead facts sufficient to establish that Met Council was a joint employer of the plaintiffs"); *Wolman v. Catholic Health System of Long Island*, 853 F. Supp. 2d 290, 298 (E.D.N.Y. 2012)(reviewing factual allegations in amended complaint and holding "[t]hese facts, while perhaps establishing some general commonalities between Defendants, do not touch on the central issue: whether Defendants exercised sufficient control over Plaintiffs to be considered their joint employers under the FLSA"); *Sampson v. Medisys Health Network, Inc.*, No. 10-CV-1342 (SJF)(ARL), 2012 WL 3027838 at *4 (E.D.N.Y. July 24, 2012)(applying economic reality test and finding "[t]he facts alleged may suggest some kind of affiliation among the defendants, but the Court does 'not believe that they are sufficient to allege a joint employer relationship .... In short, plaintiffs have failed to include factual allegations sufficient to 'raise a right to relief above the speculative level [quoting *Twombly, supra*].'").

This Court has repeatedly recognized that "companies that are part of an 'integrated enterprise' or 'engaged in a joint venture' may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures." *Lopez*, 2012 WL 6062501 at *4 (citing *Camio v. Douglas Elliman, LLC*, No. 06-Civ.-7092 (NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007)); *see also, e.g., Wolman v. Catholic Health, supra*, 853 F. Supp. 2d at 298 (E.D.N.Y. 2012) (holding that allegations "which perhaps establish[] some general commonalities between Defendants" do not establish control such that joint employment is adequately plead); *Sampson v. MediSys Health Network, Inc. supra*, at *4 ("The facts alleged may suggest some kind of affiliation among the defendants, but the Court does not believe they are sufficient to allege a joint employer relationship or that all defendants meet the definition of 'employer' under the FLSA."); *Diaz v. Consortium for Worker Education, Inc.*, No. 10-Civ.-

10

01848 (LAP), 2010 WL 3910280, at * 3 (S.D.N.Y. Sept. 28, 2010) (holding that allegation which "only shows that defendants shared a common goal" is insufficient to qualify defendants as joint employers).   Moreover, "the fact that each [c]orporate [d]efendant is owned in whole or major part by the same persons simply does not permit [the] [c]ourt to disregard their distinct legal statuses."   *Paz v. Piedra*, No. 09-Civ.-03977 (LAK)(GWG), 2012 WL 121103, at *7 (S.D.N.Y. Jan. 12, 2012) (citations omitted).   *See also, Nakahata*, 2012 WL 3886555 at *10 (rejecting as insufficient allegations that defendants are "integrated enterprises" and their human resources are centrally located and controlled; "Plaintiffs must ... connect these Defendants to the allegations of wrongdoing or show that [they] exert significant control over the employment of the named Plaintiffs");   *Sampson*, 2012 WL 3027838, at * 4 (rejecting as conclusory allegations that "defendants engage in a joint venture of operational control"; "[t]here are no facts that indicate that Medisys had any direct role in hiring or firing the plaintiff  or that it supervised or controlled their work schedules");   *Wolman*, 853 F. Supp. 2d at 298 (rejecting as insufficient allegations that defendants are an "integrated enterprise," "have common ownership," and are "engage[d] in a joint venture").

        The "fundamental question" is whether <u>each</u> Moving Defendant had the ability to control the various Plaintiffs' employment.   *See Lopez*, 2012 WL 6062501  at * 3 ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees.");   *Sampson*,  2012 WL 3027850 at *12 (dismissing FLSA claims against those defendants which plaintiffs failed to allege "had any direct role in hiring or firing the plaintiffs . . . supervised or controlled their work schedules . . . [or] had any direct role in controlling the plaintiffs' conditions of employment or determining their rate and method of payment");   *Diaz,* 2010 WL 3910280, at *10 (dismissing

FLSA claims against defendants because "[t]he complaint contains no facts that indicate that [the defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records" to demonstrate that defendants were plaintiffs' employer).

In *Paz*, for example, this Court explicitly rejected the theory that four corporate defendants which each separately managed a restaurant location could be held liable as joint employers for each other's FLSA and NYLL violations affecting the plaintiffs and class members. 2012 WL 121103 at *7, 8. Similarly, in *Lopez*, the plaintiffs sought unpaid overtime wages from several corporate defendants pursuant to the FLSA and NYLL. Plaintiffs alleged that all of the corporate defendants (1) were under common control, (2) operated from a single facility and shared key employees, including a bookkeeper, an accountant, and a general manager, and (3) shared a common clientele and worked for the common purpose of providing a full range of services to companies with commercial kitchens. *Lopez*, 2012 WL 6062501, at *4. The Court held that t "[a]lthough they allege an 'integrated enterprise,' Plaintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the Corporate Moving Defendants and themselves." *Id.*

Here, just like in *Lopez*, Plaintiffs attempt to sidestep their burden of pleading a relationship of control between Corporate Sophie's Defendant, the Non-Franchise Defendants and themselves by grouping all of the Defendants together and offering just blanket recitations of applicable legal standards alleging in conclusory fashion that the Corporate Sophie's Defendant is a co-employer because the  Defendants "all suffered or permitted Plaintiffs and similarly situated employees to work" (SAC ¶45); "acted directly or indirectly in the interest of one another in relation to plaintiffs and similarly situated employees" (SAC ¶45); " each have an

12

economic interest in the Sophie's Locations in which Plaintiffs and similarly situated employees work (SAC ¶45); all simultaneously benefited from Plaintiffs' work (SAC ¶45); each had either functional and/or formal control over the terms and conditions of the work of Plaintiffs and similarly situated employees (SAC ¶45); and Plaintiffs and similarly situated employees performed work integral to each of the defendant's operations. (SAC 45).

These conclusory assertions without any distinction among the Defendants are insufficient to show that "all" of the Defendants functioned as Plaintiffs' joint employers. The Chamberlain Plaintiffs admit that they worked only at 21 W. 45th Street, New York, one of the Chamberlain Franchisees, and Verea only worked at Mahabir. None of the Plaintiffs worked for the Corporate Sophie's Defendant nor the Non-Franchise Defendants.

In a further effort to lump the Corporate Sophie's Defendant and the Non-Franchise Defendants in with the rest of the Defendants[7] Plaintiffs claim that (a) the Corporate Sophie's Defendant is an employer due to its being the franchisor of the Chamberlain Franchisees and Mahabir, and that the Non-Franchise Defendants are employers because allegedly S. Luna and P. Luna who allegedly control Mahabir also control the Non-Franchise Defendants.

Tellingly, Plaintiffs do not assert that either the Corporate Sophie's Defendant or the Non-Franchise Defendants hired or fired Plaintiffs, determined the rate of compensation or controlled Plaintiffs respective work schedules as Plaintiffs never worked for them.

The SAC simply does "not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees." *Lopez*. Therefore, because Plaintiff's own allegations

---

[7] See the Four Claims where allegations are made against the "Defendants" regardless of their relationship with any of the Plaintiffs.

establish that the Moving Defendants were never Plaintiff's employers the SAC should be dismissed against them.

## POINT III

### The Allegations Against the Corporate Sophie's Defendant Are Typical of a Franchisor-Franchisee Relationship Which Does Not Give Rise to Co-Employer Status.

In a further attempt at obfuscation, the SAC alleges, in conclusory form unsupported by any facts, that the Corporate Sophie's Defendant (a) acted directly or indirectly in the interest of the other defendants; (b) are economically interdependent; (c) have "either functional and/or formal control over terms and conditions of work"; (d) "exercised the authority to control, directly or indirectly, the work of Plaintiffs"; or (e) that the Plaintiffs' work is "integral" to Corporate Sophie's Defendant's operation. ( SAC ¶¶ 53, 60, 66)

By these unsupported allegations, Plaintiffs try to show control by the Corporate Sophie Defendant over both Defendant Franchisees and Non-Franchise Defendants specifically based upon its position as a franchisor.  However, the SAC is devoid of any specific allegations that the Corporate Sophie's Defendants (a) had any control over, interactions with, or made any decisions regarding the Chamberlain Plaintiffs or the Chamberlain Franchisees; and (b) had any interaction or control over the Non-Franchise Defendants (for whom none of the Plaintiffs worked).  Indeed, Plaintiffs cannot refute that the Corporate Sophie's Defendant and Non-Franchise Defendants are separate corporate entities.

It is a known fact that a franchisor imposes standardized practices and methods on its franchisees and exercises certain constraints on how they carry out their business. Plaintiffs essentially argue that these constraints on the franchisee make the franchisor a co-employer of the franchisees' employees.  Such an argument is directly refuted by the law.

14

Reviewing the SAC in that context, the Court should find that the SAC's allegations recite the features of a franchisor-franchisee relationship and not one of co-employment.  For example, the SAC, essentially tracking the Franchise Agreements, alleges that Plaintiffs' work as delivery persons is "integral to Corporate Sophie's Defendant's operation" (SAC ¶ 54); the Corporate Sophie's Defendant "coordinate customer service functions" for all franchise locations, whether corporate and franchised owned, by providing a website function through which orders can be tracked (SAC ¶ 55); the Corporate Sophie's Defendant allegedly controls many aspects of the Franchise and Non-Franchise Defendants' operations by requiring that food products, supplies and materials meet certain specifications (SAC ¶ 56);  the Corporate Sophie's Defendant develops and implements hiring and management policies for use in all corporate-owned and franchise-owned stores (SAC ¶ 57); Corporate Sophie's Defendant required franchisees to implement training programs for store employees, and provided training materials for this purpose (SAC ¶ 64); the Corporate Sophie's Defendant "through [their] franchise agreements and in other ways," set requirements for the Franchise Defendants and Non-Franchise Defendants' operations by setting delivery areas, monitoring delivery times, specifying equipment, uniforms and supplies to be used, and specifying methods and procedures to be used in preparing and delivering customer orders (SAC ¶59); the Corporate Sophie's Defendant provides computer programs to track performance of store employees, including programs that track the beginning and ending times of each delivery (SAC¶ 61); the Corporate Sophie's Defendant requires the use of certain recordkeeping systems, including systems for tracking hours and wages and retaining payroll records (SAC ¶ 68); the Corporate Sophie's Defendant requires the Franchise Defendants to retain records, and monitor those records (SAC¶ 69); and

15

the Corporate Sophie's Defendant have the right to inspect operations of the Franchise Defendants. (SAC ¶ 70)

The SAC also alleges that the Corporate Sophie's Defendant "knew or should have known" of the violations by the Franchise Defendants and Non-Franchise Defendants (of which there are none pleaded), and "had the power to stop" them but did not do so. (SAC ¶¶ 7-12)

However, other than insufficient conclusory allegations that the Corporate Sophie's Defendant, because of its franchise agreements with the Franchise Defendants, "controlled many aspects of the Franchise and Non-Franchise Defendant's (SAC ¶ 56)[8] operations and, according to Plaintiffs, "had the authority and exercised the authority to control, directly or indirectly, the work of Plaintiffs" (SAC ¶ 60) there are no facts alleged in the SAC that support the claim that the Corporate Sophie's Defendant had functional or formal control over the Plaintiffs.

Indeed, conversely, the SAC clearly alleges that these restaurants are independently owned and operated, self-contained businesses, conclusively established by the fact that the Chamberlain Plaintiffs worked solely for the Chamberlain Franchisees and Verea worked exclusively for Mahabir. None of the Plaintiffs "work for" the Corporate Sophie's Defendant, or for that matter the Non-Franchise Defendants, any more than employees of any franchise business "work for" the franchisor. They work for their franchisee employer and help that franchisee employer to successfully trade on an established brand and proven methodology for selling Cuban cuisine.

---

[8] The constant reference to "controlling the Non-Franchise Defendants" is simply unsupported by any factual basis in the SAC. Indeed, there is nothing in the SAC alleging any actions by the Non-Franchise Defendants and any allegations against them are allegedly based upon the fact that S. Luna is an officer or managing member of the Non-Franchise Defendants.

16

Thus, as the Court in applying the economic realty test in *Singh v. 7-Eleven, Inc.,* No. C-05-04534 (RMW), 2007 WL 715488, at *3 (N.D.Cal. Mar. 8, 2007) stated, "a court must 'consider the totality of the circumstances of the relationship, including whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." (*quoting Hale v. State of Arizona*, 993 F.3d 1387, 1394 (9th Cir. 1993)). The court went on to find that there was "no evidence which indicates that 7-Eleven exercised any control over any terms of the employment or influenced the [franchisee's] choice of employees or manner of hiring." *Id.*, at *4. The court also noted that 7-Eleven's control over store hours, uniforms, and food service and deliveries, and ability to terminate the franchise agreement for certain breaches, did "not permit 7-Eleven to interfere with day-to-day operations of the Store." *Id.*, at *5. Similarly, 7-Eleven's control over ministerial functions, such as "payroll functions, including keeping and generating time records; withholding and paying federal and state taxes, worker's compensation premiums, and EDD taxes; calculating, generating, and delivering the employees' paychecks; filing quarterly returns; and providing employees with annual W2s," was insufficient to establish that 7-Eleven had control over labor relations. *Id.* Based on these facts, the court found that "7-Eleven was not plaintiffs' employer under the economic reality test." *Id.* at *6.

Likewise, in *Reese v. Coastal Restoration and Cleaning Services, Inc.,* Civil Action No. 1:10-cv-36 (RHW), 2010 WL 5184841, at *3 (S. D. Miss. Dec. 15, 2010), the court applied the same four factor test, finding that the franchisor did not have the power to hire/fire employees despite a contractual provision that prevents the operator from employing any person convicted for a felony or any type of assault and did not supervise or control plaintiffs work schedule or

conditions of employment. *Id.*, at *4. The court also found that certain reporting obligations in the franchise agreement did not establish that the franchisor determined the rate and method of pay and maintenance of employment records. *Id.*, at *5. Accordingly, the court found that the plaintiff's "position that his employment 'extended through' the franchisee to the franchisor by virtue of the franchise license agreement between the latter, is unsupported by the record evidence." *Id.*

In *Hatcher v. Augustus,* 956 F .Supp. 387 (E.D.N.Y. 1997) a Title VII case, the court found that a franchisor was not a joint employer for purposes of liability under Title VII. Using an 11-factor "hybrid test," the court largely relied on the fact that "[the franchisor] did not operate the 7-Eleven store," and that the franchisee "was the sole operator, in accordance with the requirements of the written franchise agreement, "and "exclusively possessed the rights and responsibilities regarding all employment matters and the day-to-day operations in his store, and his relationship with the plaintiff as his employee." *Id.*, at 392.

In *Jean-Louis v. Metropolitan Cable Communications*, *Inc.*, 838 F.Supp.2d 111, 126-28 (S.D.N.Y. 2011) and *Lawrence v. Adderley Industries, Inc.*, No. CV-09-2309 (SJF)(ETB), 2011 WL 666304 (E.D.N.Y. Feb. 11, 2011), numerous methods of control by cable company contractors over their subcontractors, were designed to standardize operational practices and maintain quality control in order to uphold and preserve the integrity of the brand. In both cases, the implementation of these controls were not simply alleged, but rather, after full discovery were in fact proven to be as alleged, and these were still held to be insufficient as a matter of law to satisfy the *Carter* and *Zheng* tests and make the cable companies co-employers of their subcontractors' employees.

18

In this case, the SAC does not even allege any "facts" that show that Corporate Sophie's Defendant had authority to hire or fire any of the Plaintiffs, and especially not the Chamberlain Plaintiffs, that it supervised or controlled any of the Franchise Defendants' (and Non-Franchise Defendants) work schedules or conditions of employment, determined the rate and method of payment or maintained employment records for the Franchise Defendants (and Non-Franchise Defendants). Moreover, there are no allegations that S. Luna or P. Luna had any operational control of the Chamberlain Franchisees.

Simply put, that the Corporate Sophie's Defendant could not be a co-employer of its franchisee's employees for FLSA purposes solely by reason of imposing standardized procedures, methods and systems of operation on the franchisees.

**A. The Chamberlain Franchisees were controlled by the Chamberlain Defendants.**

In every instance where there is a factual allegation of the "Defendants" interacting with Plaintiffs, the SAC focuses specifically on the Individual Chamberlain Defendants, the Chamberlain Franchisees and Mahabir and not the Corporate Sophie's Defendant.

As it pertains to the Chamberlain Franchisees, the SAC specifically alleges that it was the individual Chamberlain Defendants (Chamberlain and Lopez), not the Corporate Sophie's Defendant, who "directed the operation" of the Chamberlain Franchisees and "exercised operational and functional control" over all three franchise location (SAC ¶ 26 and 46); promulgated the employment policies, "including compensation policies," for the Chamberlain Franchisees (SAC ¶ 47); hired the Chamberlain Plaintiffs to work at their restaurant located at 21 W. 45th Street (SAC ¶¶ 68, 73 and 79); "had the right to control plaintiffs Cordova, Gonzalez and Cortes and had the power to hire and fire employees, determine their rates and methods of compensation, determine their work schedules, supervise and control work of the employees,

19

including Plaintiffs and otherwise affect the quality of the employees' employment" (SAC ¶ 48); are present at the Chamberlain Franchisees on a daily basis, and have direct interaction with employees at each location by, for example, paying the employees training and supervising the work of the employees, hiring and training managers and mandating that all issues concerning the employees' employment - including hours worked and pay received - be authorized and approved by them (SAC ¶ 49). Moreover, the Third and Fourth Claims pleading retaliation are specific that the retaliatory action was by the Chamberlain Defendants and not any of the Moving Defendants.

### B.   There Are No Allegations against the Non-Franchise Defendants.

Plaintiffs' inclusion of the Non-Franchise Defendants as co-employers is based solely upon their allegations that S. Luna and P. Luna operated and controlled the Non-Franchise Defendants (SAC ¶ 19,20) and Mahbir.   However, there are no facts to support any claims against the Non-Franchise Defendants as there is no functional relationship between the Non-Franchise Defendants and the Chamberlain Defendants or Mahabir, nor did any of the Plaintiffs work for the Non-Franchise Defendants.  (See Point II, supra).

Plaintiffs allegations that the Corporate Sophie's Defendant, in addition to being involved in the "operation and management" of the Franchise Defendants (by virtue of being the franchisor), was also involved in the development and implementation of policies of the Non-Franchise Defendants, are simply conclusory and factually unsupported.  Essentially, Plaintiffs allege that because Corporate Sophie's Defendant licenses franchises and S. Luna is an officer of the Corporate Sophie's Defendant and the Non-Franchise Defendants and allegedly Mahabir, it must also control the Non-Franchise Defendants making them joint employers.  While this is a convenient theory, it is unsupported by any facts alleged in the SAC.

20

The Second Circuit has cautioned with regard to outsourcing that even "extensive supervision" of the operations of the subcontractor "weighs in favor of joint employment only if it demonstrates effective control of the plaintiff's employment." *Zheng,* 355 F.3d at 75.  The SAC contains no factual allegations that the Corporate Sophie's Defendant or the Non-Franchise Defendants hired or fired Plaintiffs, trained them, set their work schedules, determined or paid their compensation, or, indeed, had any interaction with them.  Additionally, the SAC contains no factual allegations that S. Luna had any functional control over the Chamberlain Franchisees. Accordingly, since there are no allegations that support the Non-Franchise Defendants being joint employers, the SAC should be dismissed against the Non-Franchise Defendants.  *See Jean-Louis*, 838 F. Supp. 2d at 126-128 (S.D.N.Y. 2011); *Lepkowski v. Telatron Marketing Group, Inc.*, 766 F. Supp. 572, 579-80 (W.D.Pa. 2011) (Rule 12(b)(6) motion to dismiss).

## POINT IV

### The Moving Defendants Are Not Part of a Single Integrated Employer

A "single employer" situation exists where two nominally separate entities are actually part of a single integrated enterprise. *Clinton's Ditch Coop. co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985).  In order to determine whether multiple defendants constitute a single employer courts consider the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Perez v. Westchester Foreign Autos, Inc.* No. 11-Civ.-6091 (ER), 2013 WL 749497 at *7 (S.D.N.Y Feb. 28, 2013) (citing *Cook v. Arrowsmith Shelburne, Inc.* 63 F.3d 1235, 1240 (2d Cir. 1995).

Here, there are no allegations that there is a interrelationship between the Chamberlain Franchisees and any of the other Moving Defendants other than the fact that the Corporate

21

Sophie's Defendant is the franchisor of the Chamberlain Franchisees and Mahabir and that there is a centralized website where orders can be placed for delivery from a specific restaurant.

Although Plaintiffs proffer conclusory allegations that Mahabir and the Non-Franchise Defendants have similar ownership, there are no specific facts to support allegations of centralized control of labor relations or common management between the Chamberlain Franchisees and Mahabir and the Non-Franchise Defendants.   Moreover, Plaintiffs' allegations are essentially contradictory as the SAC itself actually differentiates between management and control of the various restaurants.

Thus, in SAC ¶90-94, Plaintiffs allege that the Chamberlain Franchisees are owned and operated as a single enterprise (SAC ¶90), share common ownership and management (SAC ¶91), act in the interest of each other with respect to employees (SAC ¶92), are controlled by the same owner or owner group operating as a unified operation (SAC ¶92) and share a common business purpose (SAC ¶93).

Similar allegations are made about Mahabir and the Non-Franchise Defendants (SAC ¶95-99).   However, although the SAC seeks to "throw" the Corporate Sophie's Defendant into the same pot, there is nothing in the SAC that connects the Corporate Sophie's Defendant to either or both "enterprises" except for the fact that it is a franchisor of the Chamberlain Franchisees and Mahabir.

In a further attempt at obfuscation, in SAC ¶100, Plaintiffs, clearly contradicting the previous nine paragraph, try to lump all of the Defendants together without any differentiation, alleging in conclusory fashion, that the "individual Defendants are individuals who own the stocks of the Franchise Corporate Defendants and Non-Franchise Corporate Defendants and manage and make all business decisions."   There are no facts in the SAC which support the

22

allegations that the "individual defendants" make all business decisions for the Chamberlain Franchisees, Mahabir and the Non-Franchise Defendants.  In fact, the SAC actually differentiates between ownership of the Chamberlain Franchisees and Mahabir and the Non-Franchise Defendants. This results in logical conundrums or impossibilities when the SAC seeks to charge the Corporate Sophie's Defendant and the Non-Franchise Defendants with responsibility for the actions of all the other defendants and more specifically the Chamberlain Franchisees and the Individual Chamberlain Defendants.

Simply put, the allegations in the SAC provide only conclusory allegations that the Moving Defendants had functional control over any of the Plaintiffs.  Accordingly, the Moving Defendants cannot be considered a single integrated employer.

## POINT V

### The Third and Fourth Causes of Action
### Should be Dismissed Against the Moving Defendants

The Third and Fourth causes of action, pled as retaliation claims, are specific to  actions taken by the Individual Chamberlain Defendants, alleging that they fired Cordova in retaliation for participating in this lawsuit (SAC ¶161) and that said termination took place after the "Defendants" were served with the original Summons and Complaint in this action.  Plaintiffs cannot allege that the Moving Defendants were somehow liable for a retaliation claim, when such alleged retaliation was solely and allegedly committed by the Chamberlain Defendants.

It is only through the unsupported allegations alleging co-employer status that Plaintiffs seek to capture the Moving Defendants in the retaliation claims.   Since it is conclusively established that the Moving Defendants are not a co-employer or single integrated employer, the retaliation claims should be dismissed as against them.

## POINT VI

### The Claims Against Sofia Luna Should Be Dismissed

Courts have consistently held that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. " *Hernandez v. La Cazuela de Mari Restaurant, Inc.,* 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007) (quoting *Moon v. Kwon,* 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)). The question of whether a corporate officer or director is a "joint employer" "depends on whether [that individual] exercised sufficient control over [p]laintiffs to be considered their employer." *Wolman.* 2012 WL 566255, at *6 (citing *Barfield,* 537 F.3d at 143). (allegations that corporate officers were involved in setting pay policies did not adequately allege "power to control" workers in question) ("[C]ourts will not find individual liability when the relationship between plaintiff-employees and the putative employer is too attenuated, especially when the entity has a significant number of employees.") (citing *Tracv v. NVR. Inc.,* 2009 WL 3153150, at *4 (W.D.N.Y. Sept.30, 2009)); *Sampson v MediSys Health Network, Inc.,* *Diaz v. Consortium for Worker Educ. Inc.,* 2010 WL 3910280, at *4 (S.D.N.Y. Sept.28, 2010) (complaint "contain[ed] no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records."); *Xue Lian Lin v. Comprehensive Health Memt., Inc.,* 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009); *Cannon.* 2007 WL 4358456, at *3–5.

Here, at a minimum, any claims against S. Luna, especially as to any actions of the Chamberlain Defendants and specifically as to the Third and Fourth Causes of Action, should be dismissed as there are no allegations that she had any direct role in managing, hiring or firing Plaintiffs, determining their hours or maintaining their employment records.

24

## CONCLUSION

For the reasons set forth herein, the Moving Defendants motion should be granted.

DATED:      December 20, 2013      DAVIDOFF HUTCHER & CITRON LLP
                Garden City, New York

By:

Mark E. Spund

Attorneys for Defendants SCCF INC., LUNA
ENTERPRISES INC., SOPHIE'S RESTAURANT
#3 LLC and SOFIA LUNA
200 Garden City Plaza, Suite 315
Garden City, New York 11530
(516) 248-6400
Fax (516) 2486422
mes@dhclegal.com

25