UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CECILIO CORDOVA et al.,

        Plaintiffs,

    -v-                         No.  13CIV5665-LTS-HP

SCCF, INC. et al.,

        Defendants.
--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiffs Cecilio Cordova ("Cordova"), Ronald Hoayek-Gonzalez ("Gonzalez"),

Macario Cortes ("Cortes") and Martin Martinez Verea ("Verea" and collectively, "Plaintiffs")

bring this putative collective and class action, under the Fair Labor Standards Act, 29 U.S.C.

§§ 201 et seq. ("FLSA") and New York State Labor Law, §§ 190 et seq. and 650 et seq.

("NYLL"), alleging that their employers failed to pay them statutory minimum wages and

overtime compensation, misappropriated a portion of their tips and retaliated against Plaintiff

Cordova for filing this lawsuit.  Defendants SCCF, Inc. ("SCCF");[1] Luna Enterprise, Inc. d/b/a

Sophie's Cuisine ("Luna Enterprise"); Sophie's Restaurant #3 LLC d/b/a Sophie's Cuban

Cuisine ("Sophie's Restaurant #3")[2] and individual Defendant Sofia Luna ("S. Luna")

(collectively, the "Moving Defendants") move, pursuant to Federal Rule of Civil Procedure

12(b)(6), to dismiss the Second Amended Complaint (the "SAC") as against them.  They argue

that they are not proper parties to this action because they did not function, together with the

---

[1]     Defendant SCCF is also denominated in Plaintiffs' Second Amended Complaint (the
"SAC") as the "Corporate Sophie's Defendant."

[2]     "Luna Enterprise" and "Sophie's Restaurant #3" are referred to collectively in the
SAC and in this Memorandum Opinion and Order as the "Non-Franchise
Defendants."

Non-Moving Defendants,[3] as either joint employers or a single integrated employer under the FLSA and NYLL.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has considered carefully the parties' submissions and arguments. For the following reasons, the Court grants the Moving Defendants' motion in part and denies it in part.

BACKGROUND[4]

Plaintiffs allege that Defendant SCCF runs a Cuban restaurant franchisor that depends on its franchisees and corporate-owned stores selling and delivering Cuban cuisine under a prescribed model.  (SAC ¶ 36.)  Defendants 45th St. Cuban, the Chamberlain Restaurant and 27 Smith St. (the "Chamberlain Franchises") are three SCCF franchised restaurants located at 21 West 45th Street, New York, NY, 141 Fulton Street, New York, NY, and 27 Smith Street, Brooklyn, NY, respectively, and owned by Defendants T. Chamberlain and A. Lopez.  (Id. ¶¶ 23-26, 33, 36.)  Plaintiffs allege that T. Chamberlain and A. Lopez are the owners, officers, shareholders, directors, supervisors, managing agents and proprietors of the Chamberlain Franchises and actively participate in their day-to-day operation.  (Id. ¶¶ 21-26, 46-49.) Defendant Mahabir Enterprises is another SCCF franchise located at 28 East 23rd Street New York, NY.  (Id. ¶ 27.)  According to the SAC, Mahabir is operated by the two individual Luna Defendants, S. Luna and P. Luna.  (Id. ¶ 30.)  Defendants Luna Enterprise and Sophie's

---

[3]     The Non-Moving Defendants are 45th St. Cuban, LLC d/b/a Sophie's Cuban Cuisine (45th Street), Chamberlain Restaurant Inc. d/b/a Sophie's Cuban Cuisine ("Chamberlain Restaurant"); 27 Smith Street Cuban LLC d/b/a Sophie's Cuban Cuisine ("27 Smith Street"); Mahabir Enterprises LLC d/b/a Sophie's Cuban Cuisine ("Mahabir Enterprises") (collectively, the "Franchise Defendants); and Patricia Luna ("P. Luna"); Thomas Chamberlain ("T. Chamberlain") and Alvin Lopez ("A. Lopez").

[4]     The following facts are alleged in the SAC.  Only the allegations most relevant to the instant motion are recited below.

Restaurant #3 (the two "Non-Franchised Defendants") are two separate, corporate-owned restaurants located at 96 Chambers Street and 26 Broadway, New York, NY.  (Id. ¶¶ 28, 29.) Plaintiffs Cordova, Gonzalez and Cortes were hired by T. Chamberlain and A. Lopez and were employed as non-exempt delivery persons, stock persons and cleaners at 45th Street, one of the three Chamberlain Franchise locations.  (Id. ¶¶ 68, 69, 73, 79.)  Plaintiff Verea was hired by Mahabir to work as a non-exempt delivery person, stock person and cleaner at its 28 East 23rd Street Location.  (Id. ¶ 85.)

In the SAC, Plaintiffs assert two wage and hour claims and two retaliation claims under the FLSA and the NYLL against all of the Defendants.  The four claims are: (1) that "Defendants" violated the FLSA by, inter alia, failing to pay statutory minimum wages, taking an unlawful tip credit, failing to pay required overtime wages, misappropriating a portion of tips and requiring employees to participate in an improper tip pool in violation of the FLSA (SAC ¶¶ 124-40); (2) that "Defendants" violated the NYLL by, inter alia, failing to pay minimum wages, taking unlawful tip credits, failing to pay overtime wages, failing to pay the spread of hours premium, misappropriating tips, failing to pay wages for hours worked off the clock, obtaining "kickbacks" from employees and failing to maintain payroll records for six years as required by law (SAC ¶¶ 141-158); and (3) and (4) that "Defendants" retaliated against Plaintiff Cordova under the FLSA and under the NYLL respectively by terminating him after service of the original summons and complaint.  (SAC ¶¶ 159-72.)

According to Plaintiffs, SCCF coordinates certain customer service functions at both its franchises and the corporate-owned restaurants.  (SAC ¶ 13.)  The SAC contains general allegations that SCCF maintains functional control over these entities so as to qualify as Plaintiffs' employer by: requiring that all food products, supplies and materials meet

specifications set by SCCF; developing and implementing hiring and management practices;

setting delivery areas and procedures; providing programs to track employees' performance;

requiring the use of a record keeping system to track delivery times, wages and hours; and

maintaining the right to inspect the facilities and operations of both the Franchise and Non-

Franchise Defendants.  (Id. ¶¶ 56-63.)  The Franchise Defendants are also required to pay

royalties to SCCF under their franchise agreements.  (Id. ¶ 67.)  Other than the SAC's general

allegations, which lump together the Franchise and Non-Franchise Defendants, the SAC does not

contain any specific allegations as against the Non-Franchise Defendants and none of the

Plaintiffs worked directly for the Non-Franchise Defendants.


<u>DISCUSSION</u>

When deciding a motion under Rule 12(b)(6) to dismiss a complaint for failure to

state a claim, the Court "accept[s] as true all factual statements alleged in the complaint and

draw[s] all reasonable inferences in favor of the non-moving party."  <u>McCarthy v. Dun &</u>

<u>Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  While detailed factual allegations are not

required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell</u>

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, (2007)).  To be plausible, a plaintiff's claims

must "contai[n] factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  <u>Lundy v. Catholic Health System of Long</u>

<u>Island, Inc.</u>, 711 F.3d 106, 114 (2d Cir. 2013) (internal quotation marks and citations omitted).

A plaintiff must do more than provide "labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.

Whether the Moving Defendants Were Joint Employers of Plaintiffs

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.S. § 203(d) (LexisNexis 2013). The FLSA defines "employ" as (including) "to suffer or permit to work." 29 U.S.C. § 203(g) (LexisNexis 2013). "This is the broadest definition [of employ] that has ever been included in any one act . . . and it encompasses working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category." Zheng v. Liberty Apparel Co., 355 F.3d 61, 69 (2d Cir. 2003) (internal quotation marks and citations omitted, alterations in original). "The definition of 'employer' is similarly expansive under New York law, encompassing any 'person employing any [employee].'" Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005) (quoting NYLL § 2(6)) (alteration in original).[5]

"The regulations promulgated under the FLSA [and the NYLL] expressly recognize that a worker may be employed by more than one entity at the same time." Zheng, 355 F.3d at 66 (citation omitted). "[E]ven when one entity exerts 'ultimate' control over a worker, that does not preclude a finding that another entity exerts sufficient control to qualify as a joint employer under the FLSA." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 148 (2d Cir. 2008) (citation omitted). However, "companies that are part of an 'integrated

---

[5]     The FLSA and the NYLL employ similar standards with respect to determining employment status. Xue Lian Lin v. Comprehensive Health Mgmt., 08CIV6519-PKC, 2009 WL 976835, at *2 (S.D.N.Y. Apr. 8, 2009). "Where the FLSA's and NYLL's definitions and standards are identical, or nearly so, courts typically apply federal law to claims made under either statute." Hinterberger v. Catholic Health System, No. 08CIV380S, 2014 WL 1278919, at *10 (W.D.N.Y. Mar. 27, 2014) (citing Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2008) (where the court applied federal law to claims that, under both the FLSA and New York law, defendants were joint employers)).

enterprise' or 'engaged in a joint venture' may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures." <u>Lopez v. Acme American Environmental Co., Inc.</u>, No. 12CIV511-WHP, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) (citation omitted).  "The mere fact that each [c]orporate [d]efendant is owned in whole or major part by the same persons simply does not permit [the] [c]ourt to disregard their distinct legal statuses." <u>Paz v. Piedra</u>, No. 09CIV03977-LAK-GWG, 2012 WL 121103, at *7 (S.D.N.Y. Jan. 12, 2012).  "The [Supreme] Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, . . . determined by reference not to isolated factors, but rather upon the circumstances of the whole activity."  <u>Barfield</u>, 537 F.3d at 141 (internal quotation marks and citations omitted).  The Second Circuit has established "different sets of relevant factors [for courts to consider] based on the factual challenges posed by particular cases." <u>Id.</u> at 142.

In <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984), the Second Circuit held that, to determine whether an alleged employer had the power to control the workers in question, a court should weigh: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  However, "[n]o one of the four [Carter] factors standing alone is dispositive." Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999).  In Zheng v. Liberty Apparel Co., the Second Circuit "observed that although the four <u>Carter</u> factors might be sufficient to establish an employment relationship, 'a positive finding on those four factors' is not necessary . . . [and it] established a six-factor test pertinent to assessing the 'economic realities' in a

situation where an entity might have 'functional control' over workers even in the absence of the more formal control represented by the Carter factors." Doe I v. Four Bros. Pizza, Inc., No. 13CIV1505-VB, 2013 WL 6083414, at *7 (S.D.N.Y. Nov. 19, 2013) (quoting Zheng, 355 F.3d at 69).  The Zheng factors are: "(1) whether the alleged employer's premises and equipment were used for the Plaintiffs' work; (2) whether Plaintiffs shifted from one putative joint employer's premises to that of another; (3) the extent to which the work performed by Plaintiffs was integral to the overall business operation; (4) whether Plaintiffs' work responsibilities remained the same regardless of where they worked; (5) the degree to which the alleged employer or its agents supervised Plaintiffs' work; and (6) whether Plaintiffs worked exclusively or predominantly for one Defendant [and, like the Carter factors,] [n]o one factor is dispositive[.]"  Nakahata v. New York-Presbyterian Healthcare System, Inc., Nos. 11CIV6658-PAC, 11CIV 6657PAC, 11CIV6366-PAC, 2012 WL 3886555, at *9 (S.D.N.Y. Sept. 6, 2012) (quoting Zheng, 355 F.3d at 72) (other internal quotation marks and citations omitted).

Carter and Zheng thus establish "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA [and the NYLL]." Barfield, 537 F.3d at 143 (internal quotation marks and citations omitted).  These factors are relevant at the pleading stage when there is a question as to whether "plaintiffs have . . . adequately pled that each defendant qualifies as their 'employer' under the FLSA and the NYLL." Nakahata, 2012 WL 3886555, at *9.

SCCF

The Moving Defendants argue that, as the mere franchisor of the franchise restaurants where Plaintiffs worked, SCCF cannot qualify as Plaintiffs' joint employer. Plaintiffs contend that they have plausibly alleged that SCCF qualifies as a joint employer, pursuant to Zheng, 355 F.3d 61, under the functional control test.

The Second Circuit has not yet considered whether a franchisor can qualify as a joint employer, but the Moving Defendants cite decisions from other circuits, in which courts, using versions of the economic reality test established by the Supreme Court, have generally concluded that franchisors are not employers within the meaning of the FLSA.  See, e.g., Singh v. 7-Eleven Inc., No. C05 -04534-RMW, 2007 WL 715488, at *3-6 (N.D. Cal. Mar. 8, 2007) (applying the economic reality test and finding that 7-Eleven's control of store hours, uniforms and food service and deliveries and ability to terminate franchise agreements for certain breaches did "not permit 7-Eleven to interfere with day-to-day operations of the Store" and that even 7-Eleven's control over ministerial functions like payroll, keeping and generating time records, withholding and paying federal and state taxes was not sufficient to establish that 7-Eleven was Plaintiffs' employer); Reese v. Coastal Restoration and Cleaning Services, Inc., No. 10CIV36-RHW, 2010 WL 5184841, at *3-5 (S.D. Miss. Dec. 15, 2010) (under the economic reality test, franchisor did not have the power to fire and hire employees or supervise and control them to the extent that franchisor could be considered an employer under the FLSA).  Similarly, in this Circuit, in Hatcher v. Augustus, 956 F. Supp. 387, 392 (E.D.N.Y. 1997), a Title VII case, the court found that a franchisor was not a joint employer for the purpose of Title VII liability, noting that the franchisor did not operate the store and the franchisee "exclusively possessed the

rights and responsibilities regarding all employment matters and the day-to-day operations in his store, and his relationship with the plaintiff as his employee."

The decisions that the Moving Defendants cite, however, were all issued on motions for summary judgment after the parties had completed discovery; and the courts found that full records did not support plaintiffs' arguments that the franchisor defendants were plaintiffs' employers. For example, in Singh, 2007 WL 715488, at *4-5, the court examined the franchise agreement and deposition testimony to conclude that the franchisor defendant was not plaintiff's employer; in Reese, 2010 WL 5184841, at *4-5, the court relied on the terms of the franchise agreement and the affidavit provided by the defendant; and in Hatcher, 956 F. Supp. at 391-92, the court again relied on the terms of the franchise agreement. Here, however, there has not been any discovery and the question on this motion practice is whether the allegations pleaded in the SAC are sufficient plausibly to state a claim for relief. See, e.g., Iqbal, 556 U.S. at 678, Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002). In a situation more analogous to this one, in Cano v. DPNY, 287 F.R.D. 251, 260 (S.D.N.Y. 2012), the court granted a motion to amend a FLSA claim against a franchisor, observing that the cases in which summary judgment was granted in the favor of franchisors on FLSA claims "highlight the problems of proof that the plaintiffs may ultimately face [in proving that a franchisor is a joint employer], [but], at this stage the plaintiffs must plead only enough facts to state a claim to relief that is plausible on its face." Id. at 259 (internal quotation marks and citation omitted).

In assessing whether Plaintiffs have plausibly alleged FLSA and NYLL claims against SCCF, the Court considers Plaintiffs' allegations relevant to the functional control test outlined in Zheng, 355 F.3d 61. Plaintiffs do not dispute that the first and fourth factor weigh in Defendants' favor (SCCF's premises and equipment were not used for Plaintiffs' work and

Plaintiffs do not allege that they could have maintained a relationship with SCCF were they not employed by their direct employers).  Defendants do not dispute that the second factor weighs in Plaintiffs' favor (Plaintiffs' direct employers did not have a business that could or did shift as a unit from one putative joint employer to another).  (See Pl. Mem in Opp at 13; Def. Reply at 4.)  As to the third Zheng factor – whether Plaintiffs performed a discrete job integral to SCCF's process of production – Plaintiffs allege that, because SCCF is a chain restaurant delivering Cuban food, "Plaintiffs' work as delivery persons who deliver food and perform other duties within this model is integral."  (SAC ¶ 54.)  Plaintiffs further argue that their work within this model at Franchise Restaurants constitutes an "essential step" in the production of the service for which SCCF is in business and that it is also highly integrated work, performed on a set schedule without requiring specialized skill or technology and that each step an employee takes in the process is dictated by the rules and procedures of the "Sophie's System."  See Zheng, 355 F.3d at 73.  The fifth Zheng factor examines the degree to which the alleged employer supervises Plaintiffs' work; Plaintiffs allege that SCCF created management and operation policies and practices by providing materials for use in training store managers and employees and monitoring employee performance.  (SAC ¶¶ 56-58, 60-61.)  The SAC further alleges that SCCF had the right to visit the facilities within its network to determine if they were in compliance with those policies and practices.  (SAC ¶¶ 57, 63.)  According to Plaintiffs, SCCF also requires that the Franchise and Non-Franchise Defendants use certain record keeping systems, including systems for tracking hours and wages and for retaining payroll records and therefore, that SCCF knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning Plaintiffs' hours and wages and those of similarly situated employees.  (Id. ¶¶ 61-65.)  As for the sixth Zheng factor, Plaintiffs contend that they did not work for any other

Cuban cuisine business or any restaurant outside of Sophie's System.  Plaintiffs further allege

that the Franchise Defendants are required to pay royalties to SCCF under the franchise

agreements and thus, the financial success of SCCF depends upon the success of these

Defendants.  (Id. ¶ 67.)

   While it is not far from this juncture that Plaintiffs will need to show that SCCF

qualifies as a joint employer, taking the facts in the light most favorable to Plaintiffs, the Court

finds that Plaintiffs have plausibly pleaded facts suggestive of joint employment.  See, e.g., In re

NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (when deciding a motion to

dismiss, a court is obliged to "accept all allegations in the complaint as true and draw all

inferences in the light most favorable to the non-moving part[y] . . . ").  Therefore, the Court

denies the Moving Defendants' motion to dismiss SCCF from this action.


### Non-Franchise Defendants Luna Enterprise and Sophie's Restaurant #3

   The Moving Defendants further argue that the SAC fails to plausibly allege that

the Non-Franchise Defendants (i.e. Luna Enterprise and Sophie's Restaurant #3) are Plaintiffs'

putative employers.  According to Plaintiffs, the two individual Luna Defendants (S. Luna and P.

Luna) operated and controlled the Non-Franchise Defendants and Mahabir (see SAC ¶¶ 19, 20),

but they do not allege that any of the Plaintiffs worked for the Non-Franchise Defendants.  Even

accepting as true Plaintiffs' allegation that SCCF had the same degree of control over the

policies and procedures and day-to-day operations of the Non-Franchise Defendants as it did

over those of the Franchise Defendants, nothing in the SAC suggests that there was any joint

employer relationship between the Non-Franchise Defendants and the Franchise Defendants.

Other than use of a common website for customer orders, there are no allegations in the SAC

that the Non-Franchise Defendants ever coordinated operations with Plaintiffs' direct employers.

The cases upon which Plaintiffs rely are thus inapposite.  See, e.g, Four Bros. Pizza, Inc., 2013

WL 6083414, at *7-8 (plaintiff's allegations that the labor force was allocated between the

various locations and transferred from one to another based on changing labor needs and that the

individual defendants met daily to discuss business and conducted weekly onsite visits was

sufficient for alleging an employment relationship); Cruz v. Rose Associates, LLC, No.

13CIV0112-JPO, 2013 WL 1387018, at *3 (S.D.N.Y. Apr. 5, 2013) (complaint contained

allegations regarding how the different defendant entities ran a unified operation where decisions

concerning payment of wages were made jointly and the classification of employees was made

jointly).  Plaintiffs' conclusory allegation that – because SCCF licenses franchises and S. Luna is

a corporate officer of SCCF, the Non-Franchise Defendants and Mahabir – the Franchise

Defendants, the Non-Franchise Defendants and SCCF are necessarily joint employers of the

Plaintiffs is not sufficient to plead plausibly that status.  Accordingly, the Court grants the

Moving Defendants' motion to dismiss the SAC as against the Non-Franchise Defendants.

### S. Luna

The Moving Defendants also contend that the SAC fails to allege plausibly that S.

Luna is Plaintiffs' employer and that the claims against S. Luna should be dismissed.  "A

corporate officer with operational control of a corporation's covered enterprise is an employer

along with the corporation, jointly and severally liable under the FLSA for unpaid wages."

Hernandez v. La Cazuela de Mari Restaurant, Inc., 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007).

Having dismissed the claims against the Non-Franchise Defendants, the Court considers only S.

Luna's alleged involvement with SCCF and Mahabir Enterprises.  As previously discussed, the

SAC alleges that S. Luna owns and controls SCCF, issues franchise agreements to individuals

through the "Sophie's System" (SAC ¶ 5), and directs the operation of Mahabir Enterprises and exercises operational and functional control over Mahabir.  (Id. ¶ 51.)  The SAC also specifically alleges that S. Luna "promulgated the employment policies, including compensation policies," for Mahabir Enterprises and that she had the right to control Plaintiff Cortes and other similarly situated employees and has the power to hire and fire employees, determine rates and methods of pay, supervise and set the hours of the employees.  (Id. ¶ 52.)  According to Plaintiffs, S. Luna is present on the premises of Mahabir Enterprises and directly interacts with Mahabir employees. (Id. ¶ 53.)  The SAC also alleges that S. Luna hired Plaintiff Verea to work at Mahabir Enterprises and was directly involved in setting his wages and hours and then eventually terminating his employment.  (SAC ¶ 85-88.)  The Court finds that the allegations in the SAC "taken together . . . raise a reasonable expectation that discovery will reveal evidence that [S. Luna is an] employe[r] of Plaintiff and the members of the putative class within the meaning of FLSA [and the NYLL]."  Cruz, 2013 WL 1387018, at *2-3.


Whether the Third and Fourth Causes of Action Should be Dismissed

As for Plaintiff Cordova's retaliation claims (i.e. that he was fired because of his participation in this lawsuit (the SAC's third and fourth causes of action), even if Defendants T. Chamberlain and A. Lopez made the decision to terminate his employment, SCCF and S. Luna can be held jointly and severely liable if they are proven to have been Plaintiffs' joint employers. "When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable to those affected employees for the FLSA violations of all other joint employers."  Paz, 2012 WL 121103, at *5; see Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 186 (S.D.N.Y. 2003) ("[b]oth Duane Reade and the Hudson/Chelsea defendants

were the 'employers' of the plaintiffs under [the FLSA and the NYLL], [and are] jointly and severally obligated for underpayments of minimum wage and overtime . . .").  Because Plaintiffs have plead plausibly that SCCF and S. Luna were Plaintiffs joint employers, the motion to dismiss the third and fourth causes of action is denied.

<u>CONCLUSION</u>

For the foregoing reasons, the Moving Defendants' motion to dismiss Plaintiffs' SAC as against them is granted in part and denied in part.  The Court grants the motion to dismiss as against Defendants Luna Enterprise and Sophie's Restaurant #3; denies the motion to dismiss as against SCCF and S. Luna; and denies the motion insofar as it seeks dismissal of the third and fourth causes of action.

This Memorandum Order resolves docket entry number 36.

The case remains referred to Magistrate Judge Henry Pitman for general pretrial management.

SO ORDERED.

Dated: New York, New York
        July 16, 2014

                                                          /s/ Laura Taylor Swain
                                                        LAURA TAYLOR SWAIN
                                                        United States District Judge